**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOHN S. BRENNAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:04-0650** |
| **v.** | ) | **Judge Trauger** |
| | ) | **Magistrate Judge Brown** |
| **TRACTOR SUPPLY COMPANY,** | ) | |
| **INC.,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

Pending before the court is defendant Tractor Supply Company, Inc.'s ("Tractor Supply")

Motion for Summary Judgment (Docket No. 29), to which plaintiff John S. Brennan has

responded (Docket Nos. 40, 41), and defendant has replied (Docket No. 48).[1]  For the reasons

expressed herein, defendant's Motion will be granted.

**Factual Background and Procedural History**[2]

This case concerns alleged employment discrimination on the basis of age that occurred

---

[1]The plaintiff has also filed an objection to Tractor Supply's reply brief (Docket No. 51), in which he claims that the defendant has misrepresented the deposition testimony of a key witness in its reply brief.  The court has read and considered the arguments made by the plaintiff in this objection.

[2]Except as otherwise noted, these facts are drawn from plaintiff's Complaint (Docket No. 1, Notice of Removal, Ex. A), defendant's Answer (Docket No. 3), Plaintiff's Response to Defendant's Statement of Undisputed Facts (Docket No. 42), and Defendant Tractor Supply Company's Reply to Plaintiff's Asserted Additional Facts in Response to Tractor Supply Company's Motion for Summary Judgment (Docket No. 47-1, 47-2).  All facts detailed herein are either undisputed or undisputed for purposes of this motion, unless otherwise indicated.

1

during the time that plaintiff John S. Brennan, a 53-year old[3] citizen and resident of Hickman County, Tennessee, worked for defendant Tractor Supply Company, Inc., at its Dickson, Tennessee store. Defendant Tractor Supply is a Delaware corporation headquartered in Brentwood, Tennessee, and its business is the operation of a chain of retail farm and ranch stores in the United States. The stores provide unique products, from welders and generators to animal care products and men and women's work wear, to support its customers' rural lifestyles.

Although this case concerns discrimination that allegedly occurred when the plaintiff worked for Tractor Supply during the period from February 26, 2002 through May 25, 2004, the plaintiff had also worked for the defendant at an earlier time. The plaintiff was first hired by Tractor Supply as a Management Trainee on June 19, 2000, when he was 47 years old. He holds a bachelor's degree from Northwestern University and a masters of business administration from Lake Forest Graduate School of Management in Lake Forest, Illinois, and had previously worked for approximately one and one-half years as a sales manager at Sears (in addition to having over twenty years of experience as a "change agent" at Levi Strauss & Company and in other jobs). (Docket No. 32, Ex. A, Deposition of John S. Brennan, Ex. 1, Employment Application.) He was interviewed and hired by Brian Hutchins, who was then the District Manager for the area in which plaintiff was interested. In July 2000, the plaintiff accepted a part-time teaching position at Nashville Tech, which was scheduled to begin in August 2000.[4]

_____

[3]Plaintiff's birth date is July 12, 1952.

[4]The parties dispute whether the plaintiff told Hutchins about the teaching position before or after he accepted it. In accord with Hutchins's testimony, the plaintiff initially testified that he notified Hutchins about the teaching position after he had already accepted it. (Docket No. 42 ¶¶ 30, 31.) However, on the May 9, 2005 errata sheet attached to his March 29, 2005 deposition, the plaintiff changed his response (which he characterizes as an "inadvertent misstatement") to indicate that he had notified Hutchins about the teaching opportunity "before" accepting the job. (Docket No. 42 ¶¶ 30, 31;

Hutchins allowed Brennan to teach at Nashville Tech during the management training process, and Tractor Supply adjusted his management training schedule to accommodate his part-time teaching position. In mid-September 2000, the plaintiff was offered (and accepted) a Store Manager position at Tractor Supply's Jackson, Tennessee store by a District Manager in West Tennessee after having an interview arranged by Hutchins. Although Brennan was to report to the District Manager for West Tennessee and not Hutchins, Hutchins intervened and refused to allow Brennan to finish his teaching assignment while working as a Store Manager. As a result, Brennan resigned from Tractor Supply, apparently before ever starting the Store Manager job in Jackson. The defendant asserts that, after the plaintiff left Tractor Supply for the first time, the company underwent tremendous growth (partially as a result of its acquisition of its bankrupt rival, Quality Stores, in late 2001) and that part of this growth included a re-envisioning of its expectations from Store Managers, including a new focus on prior hard-line retail experience. The plaintiff disputes this new focus.

Over the course of two months in the fall of 2001, the plaintiff called Hutchins a half dozen times seeking re-employment with Tractor Supply. Hutchins did not return these calls until February 2002. At that time, the Assistant Manager of the Dickson store had unexpectedly quit, and the Store Manager, Richard Ward, had an immediate need for help. In Ward's presence, Hutchins called Brennan and told him about a job opening at the Dickson store. Ward heard Hutchins tell Brennan that the job would carry opportunities for promotion and advancement. After an interview the next day, Ward offered Brennan a position. Although

---

Docket No. 32, Ex. A, Brennan Dep. at 69, 284.) According to the plaintiff, this correction comports with other portions of his deposition. (Docket No. 32, Ex. A, Brennan Dep. at 60.)

Ward did not say what the position was, Brennan accepted the job on the spot. The job turned

out to be a team leader job, which carried supervisory responsibilities, but not the Assistant

Manager job, which remained open. The plaintiff testified that, in his opinion, he should have

been promoted to Assistant Manager three days after being hired.

After ninety days, the plaintiff received a scheduled performance appraisal in which

Ward indicated that the plaintiff was "Good/Competent" or "Exceeds Standards" in all listed

areas of work performance and that his overall rating was "Exceeds Standards." (Docket No. 32,

Ex. A, Brennan Dep., Ex. 12, Ninety-Day Performance Appraisal.) The plaintiff was given a 25-

cent pay raise, and Ward's only criticism, which he both indicated on the evaluation and

discussed with the plaintiff, was the following: "I would like to see John step forward as a more

aggressive leader in the store." (Docket No. 32, Ex. A, Brennan Dep. at 107, Ex. 12, Ninety-Day

Performance Appraisal.) In August 2002, Ward asked the plaintiff to move from working on the

sales floor to working as a receiver, a change that the plaintiff admits was a lateral move, not a

demotion. In November 2002, the plaintiff received another performance appraisal. Here again

plaintiff's overall performance rating indicated that Brennan "Exceeds Expectations" and he

received a 50-cent raise. However, Ward marked on the appraisal that the plaintiff "Needs

Improvement," i.e., that his "[p]erformance falls below company expectations/standards for this

job," in four areas: following and executing his daily planner; follow-up with customers, team

members, and manager on assignments; completing tasks in a timely manner; and showing

independent judgment. (Docket No. 42 ¶¶ 50–52, 54; Docket No. 32, Ex. A, Brennan Dep., Ex.

13, November 2002 Performance Appraisal.) In addition to words of praise, Ward also wrote in

his comments that the plaintiff needed to improve on his follow-up with customers, needed to be

more detailed in his work and better with time management, and needed to make more decisions pertaining to company direction. (Docket No. 42 ¶¶ 49, 53, 54; Docket No. 32, Ex. A, Brennan Dep., Ex. 13, November 2002 Performance Appraisal.) The evaluation contained a "Plan of Action" and established "Performance Goals" for the areas in which the plaintiff needed improvement. The plaintiff disagreed with this appraisal.

Ward stated in his affidavit that, by the late spring or early summer of 2002, he began recommending to Hutchins that Brennan be promoted to Assistant Store Manager of his store. (Docket No. 41, Second Affidavit of Richard Ward ¶ 5.)[5] Ward stated that he continued to recommend that Brennan be so promoted in the late summer or early fall of 2002, after the plaintiff had been moved from the position of team leader to the position of receiver, but that Hutchins seemed determined to find fault with the plaintiff and to oppose the idea of promoting him. *Id*. ¶¶ 5, 6. Ward attested that he finally advised Brennan to speak directly with Hutchins about the promotion. *Id.* ¶ 6. The defendant admits only that Ward testified to these facts in his affidavit, but disputes the materiality of these assertions by Ward (who was later terminated by Tractor Supply).

In December 2002, the plaintiff called Hutchins and informed him that he wanted to be a Store Manager for Tractor Supply, to which Hutchins responded that he would speak with Ward about plaintiff's promotability. This was the first conversation plaintiff had with Hutchins about moving up to a management role. In a subsequent discussion in late December 2002, Ward

---

[5]Ward testified in his affidavit that Brennan did a very good job for him at the Dickson store, working well as both a team leader and a receiver. Ward testified that, during the period that Brennan worked for him, the Dickson store was one of the highest volume stores in Hutchins's district and that Brennan was primarily responsible for the extremely high volume of special orders. The defendant admits only that Ward testified to these facts.

informed the plaintiff that he had discussed the issue with Hutchins and that there were two ways for a current team member to become a Store Manager—apply for a position as a manager trainee in the Springfield, Tennessee store or become an Assistant Store Manager in Dickson and continue training with Ward—and Ward and Brennan agreed that the next step would be further discussions with Hutchins.

In February 2003, Ward again asked the plaintiff to move positions—this time from his position as a receiver back to a position on the sales floor as a team leader. It is apparent that the plaintiff had achieved some successes during his time as a receiver—Hutchins complimented him on the innovations and improvements he had achieved in the store's receiving operations. The plaintiff sent a letter to Ward, dated February 21, 2003, in which he detailed, and expressed his dissatisfaction with, the multiple position changes he had been forced to undergo over the preceding period of months. He wrote, "I explained that, since I replaced the previous assistant manager a year ago, I feel I have effectively been operating in that capacity [of assistant manager] and performing related duties, including related personnel and training functions. We agreed that next steps would include further discussion with Brian and recruitment and training of my replacement as receiver." (Docket No. 32, Ex. A, Brennan Dep., Ex. 14, February 21, 2003 letter from John S. Brennan to Rich Ward.) He expressed dismay that, after training a replacement receiver, instead of being promoted to Assistant Store Manager, Brennan was asked to move back to the sales floor as a team leader, a job action he perceived to be "unwarranted, grossly unfair, and unjustly punitive." *Id.* Nevertheless he accepted the transfer and a 25-cent raise, which Hutchins secured for him on March 2, 2003.

In early March 2003, the plaintiff and Hutchins had further discussions about the

possibility of the plaintiff's being promoted to Assistant Manager. Hutchins told the plaintiff that the Regional Vice President, Charlie Chacon,[6] would be in Dickson to do a review of the store around the first of April and at that point "he could sign off on promoting [the plaintiff] to Assistant Manager." (Docket No. 32, Ex. A, Brennan Dep. at 165.) Both Hutchins and Chacon attest that, in late March or early April, the two discussed the Dickson store in preparation for Chacon's visit and that, at that time, Tractor Supply management believed that the Dickson store was behind on issues such as receiving, price changes, housekeeping, and several other areas. The defendant asserts that Hutchins also discussed with Chacon at this time Brennan's desire to be promoted to Assistant Manager. Both Chacon and Hutchins attest that they agreed that Brennan needed to improve his performance and sustain improved performance for a longer period of time to show that he was ready to be in management. The plaintiff disputes these assertions, made in affidavits of the two men, as contradictory of Hutchins's earlier deposition testimony. In earlier testimony, Hutchins had testified in vague terms about whether or not he had spoken with Chacon about Brennan's interest in being promoted, acknowledging that when Brennan indicated to Hutchins that he wanted to move up, there "would have been a conversation" with Chacon, but that he "could not remember exactly the conversation." (Docket No. 46, Brennan Dep. at 70–71.)[7]

_____

[6]As District Manager, Hutchins had the authority to hire and fire Store Managers and Assistant Managers, but he would seek input from his Regional Manager in the decision-making process.

[7]In his deposition, Hutchins testified:

Q.  Do you remember anything at all you told Mr. Chacon about Mr. Brennan and your assessment?

A.  Again, I don't remember the specific conversation. If I had to speculate, if I had to – as a hypothetical, I'm sure we discussed performance and his want, will and desire, but performance not matching that desire to move up, but I don't remember the specifics. That's a general comment that I think I probably would have made because that was the

7

The defendant asserts that problems with the Dickson store led to the termination of Ward for poor performance around this time.[8]  Ward was replaced as Dickson Store Manager on or around April 15, 2003 by Richard Butler.  Butler had been hired as a Management Trainee on March 3, 2003 and was a thirty-one-year-old high school graduate at the time he took the position of Dickson Store Manager.  Prior to joining Tractor Supply, Butler had more than ten years of retail experience working in management and other positions at Wal-Mart, Office Depot, Staples, and CVS Pharmacy.  The choice of Butler was made by Hutchins.  The Dickson Store Manager job was not posted (since Tractor Supply does not post Store Manager positions), and Hutchins does not recall considering anyone else besides Butler for the Dickson Store Manager position.  It is undisputed that the plaintiff says that, around April 15, 2003, Hutchins told him that he was on the "front burner" for a promotion; however, the plaintiff admits that Hutchins also told him "around the same time" that he would not be named Assistant Manager until the Dickson store conditions improved.

On May 18, 2003, one of plaintiff's co-workers submitted a written complaint about Brennan's treatment of her, after an incident in which the plaintiff yelled at her for three to five minutes as customers were walking by and looking on.  Hutchins's subsequent conversation with the plaintiff about this incident was documented in the plaintiff's personnel file as a verbal warning, although the plaintiff disputes the authenticity of this writing because it is not signed by

---

truth at that point.  So – I'm trying to help you the best I can draw a conclusion there, but that's about the best I can do for you.
(Docket No. 46, Brennan Dep. at 71–72.)

[8]The plaintiff disputes these assertions, made by Chacon and Hutchins, and contends that conflicts between Hutchins and Ward (as evidenced by "screaming matches" that Brennan allegedly witnessed) contributed to Ward's termination.

8

him.

In August 2003, Hutchins approached the plaintiff about the possibility of moving him into the position of receiver once again, switching him with another younger employee named Drew Adams (from whom Brennan would then take orders). It is undisputed that this was a lateral transfer that did not entail a pay cut and that, according to the plaintiff, the receiving department was a problem area that the store needed to fix. Nevertheless, the request frustrated the plaintiff, as he detailed in a letter to Richard Butler dated August 20, 2003. The plaintiff explained that this would be his third reassignment in twelve months at a time when he was anticipating a promotion to Assistant Manager, for which "he was qualified and deserving" but which had not been forthcoming. (Docket No. 32, Ex. A, Brennan Dep., Ex. 19, August 20, 2003 letter from John S. Brennan to Richard Butler.) He expressed his reservations about taking the place, as receiver, of Drew Adams, whom he notes "has not succeeded in the role [of receiver]," not because the plaintiff lacked confidence that he could "rectify our problems in receiving," but because he doubted Adams's ability to succeed on the sales floor. *Id.* Despite his dissatisfaction, the plaintiff pledged to accept the reassignment. *Id.*

In August 2003, Hutchins was promoted to another position within Tractor Supply and was replaced as District Manager by Joel Matthews, who was forty-eight years old at the time. In familiarizing himself with his new position, Matthews met with Butler to discuss the team members in Dickson, including Brennan. It is undisputed that Butler told Matthews at the time that he did not believe the plaintiff was ready to be an Assistant Manager because Butler thought the plaintiff lacked knowledge of operations, such as profit and loss reports, MARS reports (the breakdown and analysis of profit margin for all Tractor Supply products), and related knowledge

9

of payroll, hiring, and scheduling processes.  It is undisputed that Butler also believed that Brennan lacked the proper attitude to be in management.

On September 13, 2003, Brennan called Tractor Supply's "Out Here Hotline," a toll-free hotline designed for team members to convey concerns about unethical behavior, to report that he had been discriminated against on the basis of age over the prior eighteen months because Hutchins had told him that he was on the "front burner" for promotion but never promoted him and because he had been reassigned three times.  (Docket No. 32, Ex. A, Brennan Dep., Ex. 22, Ethics and Compliance Reporting document.)  Laurie Lance, in Tractor Supply's Human Resources Department, conducted an internal investigation into Brennan's concerns, but concluded, in a letter to the plaintiff of October 28, 2003, that his lack of promotion was due not to his age but to matters of performance and attitude.  *Id.*  On September 22, 2003, the plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission ("THRC") and the Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination on the basis of Tractor Supply's reassignments and failure to promote him dating from December 20, 2002 to September 22, 2003.[9]  (Docket No. 32, Ex. A, Brennan Dep., Ex. 23, Charge of Discrimination.)

In September 2003, a Tractor Supply customer called the company's customer complaint line to complain about Brennan's rude behavior towards her, which had occurred on two occasions while she was shopping at the Dickson store.  Matthews e-mailed Butler to say that the complaint was a "major embarrassment to your operation.  Based on the fact that you had a

---

[9]On December 12, 2003, Brennan amended his EEOC charge of discrimination to indicate that the discrimination was a "Continuing Action."  (Docket No. 32, Ex. A, Brennan Dep., Ex. 24, Amended Charge of Discrimination.)

10

customer service meeting at your store last Wednesday, John just does not 'get it.'" (Docket No. 42 ¶ 96.)  Brennan was given a written warning as a result of this incident on September 16, 2003 (after his call to the Out Here Hotline, but prior to his filing with the EEOC).  On the written warning, Brennan indicated that he found the timing of the discipline "suspicious at best" and wrote that "[r]etaliation is a violation of federal law."  (Docket No. 32, Ex. A, Brennan Dep., Ex. 20, September 16, 2003 Associate's Corrective Action Report.)[10]  It is undisputed that in October 2003, Matthews conducted a routine visit to the Dickson store and observed several problems with the Receiving Department, for which plaintiff was responsible.  On November 14, 2003, the plaintiff was given another written warning (which the plaintiff refused to sign) brought about by a truck driver's complaint that Brennan had been rude and uncooperative with him and by the plaintiff's failure to complete paperwork in connection with merchandise he loaded onto the truck, which could have resulted in a $4,000 loss of store inventory.  In a meeting with Matthews, Butler, and Lance, the three conveyed that plaintiff's conduct was unacceptable in light of his business experience, and that they had continuing concerns about his performance and commitment to the company but that they wanted to work with him to resolve their concerns.  It is undisputed that, although Tractor Supply could have fired the plaintiff for this incident, they instead offered him a choice between two options—to remain as a receiver or to move to a team leader position (and to receive additional training in either position).  Brennan accepted the team leader position and the opportunity to receive additional training from Butler, from which Brennan admittedly reaped benefits.  On November 24, 2003, plaintiff received a

_____

[10]The plaintiff testified later that he believes that Butler did not know of Brennan's September 13, 2003 call to the employee hotline at the time he gave him the written warning, although he disputes defendant's assertion that Matthews did not know of the call either.

11

scheduled performance appraisal, which the plaintiff refused to sign, in which he received a "Needs Improvement" rating in six of twenty areas of performance and which included a "Plan of Action" and "Performance Goals."

Over the next period of months, Matthews monitored the plaintiff's training with Butler. When he believed that Brennan had increased his performance to an acceptable level, he discussed the plaintiff's progress with Chacon and decided to offer Brennan a promotion to Assistant Manager of the Dickson store. On February 17, 2004, Matthews met with the plaintiff and offered him the promotion, which plaintiff accepted (effective February 15, 2004). It is undisputed that Matthews informed the plaintiff that he would not receive an hourly raise at that time because he was already being paid more than any Assistant Manager in the district. On April 21, 2004, after the plaintiff was promoted to Assistant Manager, one of the plaintiff's co-workers complained to Tractor Supply about plaintiff's "cold and rude" behavior towards her after she had turned him down for a date. On May 14, 2004, Brennan was counseled by Lance about the incident, which had been smoothed over by a discussion between the two co-workers. Meanwhile, the plaintiff completed a one-week management skills training class to continue his professional development. Subsequently, in a May 19, 2004 meeting about career advancement, Matthews told the plaintiff that the next step would be for Brennan to use his new skills to improve the performance of the Dickson store, and that no transfer to another store would be forthcoming until the conditions of the Dickson store improved.

Just before attending the management skills training program, the plaintiff had interviewed for a position at Lowe's. Brennan was offered, and accepted, a position at Lowe's and, thus, submitted a voluntary letter of resignation to Tractor Supply on May 25, 2004,

12

effective June 1, 2004. (Docket No. 42 ¶ 133; Docket No. 32, Ex. A, Brennan Dep., Ex. 39, May 25, 2004 letter from John S. Brennan to Richard Butler.) Plaintiff was replaced as Assistant Manager at Tractor Supply's Dickson store by Joan Lane, who is older than the plaintiff.

During the period from December 20, 2002, when plaintiff first expressed his interest in being promoted to Hutchins, to February 15, 2004, when the plaintiff was finally promoted, Hutchins promoted three other employees to the position of Assistant Store Manager. On April 21, 2003, Hutchins promoted Jerry Bakker to the position of Assistant Manager for the Clarksville, Tennessee store. He had been working for Tractor Supply since August 23, 2001 and was thirty-three years old at the time of his promotion. On May 26, 2003, Hutchins promoted Ken Bailey to the position of Assistant Manager for the Clarksville, Tennessee store. He had been working for Tractor Supply since November 26, 2001 and was thirty-eight years old at the time of his promotion. On June 8, 2003, Hutchins promoted Mike McClain to the position of Assistant Manager of the Franklin, Tennessee store. He had been working for Tractor Supply since June 16, 2002, and was thirty-five years old at the time of his promotion.

On June 28, 2004, the plaintiff filed an action in Dickson County Chancery Court alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.* and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.* (Docket No. 1, Ex. A.) On July 27, 2004, the defendant filed a notice of removal to this court. (Docket No. 1.) This matter is presently before the court on defendant's Motion for Summary Judgment.

## **Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall

13

be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  In determining whether the moving party has met its burden, the court must view the factual evidence and draw reasonable inferences in the light most favorable to the nonmoving party.  *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'"  *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).   If the nonmoving party, however, fails to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden, the moving party is entitled to summary judgment as a matter of law.  *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537–38 (6th Cir. 1999).

To preclude summary judgment, the nonmoving party "is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial."  *Gaines v. Runyon*, 107 F.3d 1171, 1174–75 (6th Cir. 1997).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Shah v. Racetrac*

14

*Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. To determine whether the nonmoving party has raised a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his favor. *Id.* at 255.

The court should also consider whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52). "There is no genuine issue for trial unless the nonmoving party has produced enough evidence for a jury to be able to return a verdict for that party." *Tinsley v. General Motors Corp.*, 227 F.3d 700, 703 (6th Cir. 2000). If the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative," or enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249–52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citations omitted).

<u>Analysis</u>

Plaintiff claims that Tractor Supply discriminated against him in violation of the ADEA and the THRA in three instances: (1) by passing him over for the position of Dickson Store Manager, which was awarded to thirty-one-year-old Richard Butler on April 15, 2003; (2) by failing and refusing to timely promote him to Assistant Store Manager of the Dickson store; and by (3) requiring him to trade his team leader position for the receiver position of a younger man

15

in August 2003. (Docket No. 41 at 2–3.) The court construes these claims primarily as claims of failure to promote.

The ADEA provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2004). The THRA provides:

> (a) It is a discriminatory practice for an employer to:
> (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, *age* or national origin . . .

Tenn. Code Ann. § 4-21-401(a)(1) (2004) (emphasis added). Because analysis of an age discrimination claim under the THRA is parallel to the analysis of such a claim under the ADEA, *see Richardson v. CVS Corp.*, 207 F. Supp. 2d 733, 744 (E.D. Tenn. 2001); *see also Tetro v. Elliott Popham Pontiac*, 173 F.3d 988, 993 (6th Cir. 1999); *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996), the following analysis of plaintiff's ADEA claim applies equally to his claim under the THRA.

A plaintiff bringing a claim of discriminatory treatment under the ADEA may pursue such a claim by producing direct evidence of prohibited discrimination or by relying on indirect or circumstantial evidence of discrimination in accordance with the burden-shifting framework first articulated with reference to Title VII claims in *McDonnell Douglas v. Green*. *See Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 459 (6th Cir. 2004); *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547–48 (6th Cir. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Both parties agree that the *McDonnell Douglas* framework is the proper method of

16

analysis. Under this approach, a plaintiff makes out a *prima facie* case of failure to promote by showing that (1) he was a member of a protected class—i.e., he was at least forty years old at the time of the alleged discrimination; (2) he applied for and was qualified for a promotion; (3) he was considered for and denied a promotion; and (4) other employees of similar qualifications who were substantially younger received promotions at the time the plaintiff's request for promotion was denied. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir. 2000); *Hedrick*, 355 F.3d at 459–60 (quoting *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001)); *see also Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 511 (6th Cir. 2004)*; Anthony v. BTR Auto. Sealing Sys.*, 339 F.3d 506, 515 (6th Cir. 2003); *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020–21 (6th Cir. 2000); *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996); *Brown v. State of Tenn.*, 693 F.2d 600, 603 (6th Cir. 1982).[11]

Once the plaintiff establishes the *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Coomer*, 370 F.3d at 511; *Hedrick*, 355 F.3d at 460; *Betkerur*, 78 F.3d at 1095. If the defendant is able to meet its burden, then the plaintiff must be given the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 144 (2000). *See also Coomer*, 370 F.3d at 511; *Hedrick*, 355 F.3d at 460; *Betkerur*, 78 F.3d at 1095.

---

[11]Plaintiff's claim concerning his August 2003 transfer is more properly analyzed under a slightly different formulation of the *prima facie* case, under which the plaintiff must establish (1) that he is a member of a protected class (at least forty years old); (2) that he was subjected to an adverse employment action; (3) that he was qualified for the position; and (4) that he was replaced by a significantly younger person or was treated differently from similarly-situated employees who were significantly younger. *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002).

The Sixth Circuit has made clear that, in order to show pretext, a plaintiff "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994). In other words, a jury may not simply refuse to believe an employer's legitimate, nondiscriminatory reason for its action unless there is sufficient basis in evidence to do so (otherwise, the burden of persuasion would essentially be shifted from the plaintiff to the defendant). *Id.* at 1083. "To make a submissible case on the credibility of [an] employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [the adverse action], or (3) that they were *insufficient* to motivate discharge." *Id.* at 1084 (emphasis in original and quotation marks removed) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)). *See also Hedrick*, 355 F.3d at 460 (quoting *Manzer*); *Anthony*, 339 F.3d at 516 (quoting *Manzer*).

The court conducts its analysis of plaintiff's claims by grouping the Store Manager and Assistant Store Manager positions together (because both concern the failure to promote) and then considering plaintiff's August 2003 transfer.

I.    Failure to Promote

    A.  *Prima Facie Case of Failure to Promote to Dickson Store Manager*

Plaintiff claims that Tractor Supply unlawfully discriminated against him on the basis of his age when it passed him over (and, in fact, did not even consider him) for the position of Store Manager of its Dickson store on April 15, 2003 and, instead, awarded the position to Management Trainee Richard Butler, who was then thirty-one years old.

18

As an initial matter, the parties agree that the plaintiff was a member of a protected class, as a person who was at least forty years old at all times relevant to this action. (Docket No. 3 ¶ 1.) As to whether the plaintiff applied for, was considered for, and was denied the Store Manager position, the plaintiff contends that he is not required to make this showing (which concerns part of the second prong of the *prima facie* case and all of the third prong), since Tractor Supply failed to post the open position. In *Dews v. A.B. Dick*, the Sixth Circuit held that, "in failure to promote cases a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion." *Dews*, 231 F.3d at 1022. The Court reasoned that in such cases, a company had a "duty to consider all those who might reasonably be interested in a promotion were its availability made generally known." *Id.*

In this case, the parties agree that Tractor Supply did not post the Store Manager position and that Hutchins, who was the decisionmaker with regard to the position, did not consider any other candidates besides Butler. It is evident that Hutchins would have known that the plaintiff might reasonably be interested in the position, since Brennan had expressed his interest in a promotion to the position of Store Manager to Hutchins in December of 2002. The defendant does not respond to the plaintiff's argument on this score, nor does the defendant suggest that the plaintiff's failure to apply and be considered for the Store Manager position should cause his claim to fail. Accordingly, the Court finds that the plaintiff comes within the exception to the *prima facie* case established in *Dews*, and has met his burden with respect to the third and a portion of the second prong.

19

To carry his burden with respect to the remainder of the second prong of the *prima facie* case—i.e., to show that he was qualified for the particular position—the plaintiff must raise a genuine issue of material fact to show that he possessed the objective qualifications for the position. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003) (en banc). A plaintiff can meet his burden to show that he is qualified by presenting credible evidence that his qualifications are "at least equivalent to the minimum objective criteria required for employment in the relevant field;" relevant criteria in this inquiry are the plaintiff's "education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576. The defendant contends that the plaintiff cannot establish that he was qualified and should have been considered for the Store Manager position because Tractor Supply did not even consider him to be qualified for the lesser position of Assistant Store Manager.

It is undisputed that the plaintiff was not a management trainee or Assistant Manager at the time of Butler's hiring and that these were the two ways that the plaintiff was told he could advance to become Store Manager in December 2002. Nevertheless, the plaintiff had previously completed Tractor Supply management training and had been offered a Store Manager job, which suggests that the defendant had considered him qualified in the past. The plaintiff asserts that its management priorities had changed due to an intervening restructuring. However, this prior job offer, when viewed in combination with the plaintiff's substantial higher education, his prior retail experience both at Tractor Supply and at Sears, and his satisfactory job ratings as of April 15, 2003, raises a genuine issue of material fact as to whether the plaintiff was objectively qualified for the position of Store Manager.

These factors also aid the plaintiff in carrying his *prima facie* burden to show that a

substantially younger person with similar qualifications received the promotion.  In establishing

that a non-protected employee is "similarly-situated" for purposes of demonstrating that a

similarly-situated, non-protected employee received more favorable treatment than a protected

employee, a plaintiff is not required to demonstrate "an exact correlation with the employee

receiving more favorable treatment in order for the two to be considered 'similarly-situated.'"

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).  Instead, the

plaintiff must be similar in all "relevant" aspects to the employee with whom he seeks to

compare himself.  The Sixth Circuit in *Ercegovich* cautioned that its earlier discussion of

"similarly-situated" employees in *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992), should

not be so narrowly construed as to require comparability between every single aspect of the

employees' employment.  Rather, courts should make an independent determination as to the

relevancy of a particular aspect of the plaintiff's employment status and that of a non-protected

employee.  *Ercegovich*, 154 F.3d at 352.

     First, it is beyond dispute that Butler was substantially younger than the plaintiff, at the

age of thirty-one.  The plaintiff has raised a genuine issue of material fact as to whether Butler

was similarly-situated to him with respect to his qualifications for the job.  Both the plaintiff and

Butler had completed Tractor Supply's management training.  Both the plaintiff and Butler had

prior "hard line retail" sales experience, although the plaintiff had less experience in such an

environment, having worked at a Sears store from January 1998 until April 1999 in contrast to

Butler's ten years of retail experience.  Again, although the defendant asserts that its

expectations for Store Managers had changed since the time of the plaintiff's management

training and that it valued Butler's prior work experience more highly than plaintiff's prior

21

experience (or his superior educational background), drawing all inferences in favor of the plaintiff, the court must conclude that the plaintiff has met his burden on this prong.

   B.  *Prima Facie Case of Failure to Timely Promote to Dickson Assistant Store Manager*

With respect to plaintiff's claim that the defendant discriminated against him on the basis of his age by failing to timely promote him to Assistant Store Manager, again, it is undisputed that the plaintiff was a member of a protected class during the entire time that he worked for Tractor Supply.  With respect to the second prong of the *prima facie* case, it is evident that the plaintiff "applied for" a promotion by asking Hutchins to promote him multiple times, beginning in December 2002, again in early March 2003, and around April 15, 2003, at least.  As to whether the plaintiff was qualified for a promotion to Assistant Store Manager, the defendant argues in a footnote that, because the plaintiff lacked certain operational knowledge until he received training on MARS reports and profit and loss reports from Butler in December 2003, he cannot establish that he was objectively qualified for the position of Assistant Store Manager before that time (because he did not have some of the "Competencies & Skills" that are outlined in the job description).  (Docket No. 30 at 14 n.8; Docket No. 32, Ex. A, Brennan Dep., Ex. 32, Assistant Manager Job Description.)

Despite lacking operational knowledge in report analysis—one of the "Competencies & Skills" listed in the Assistant Manager Job Description (e.g., "Analyze reports and make necessary decisions based on findings (i.e. P&L, MARS, etc.)")—the plaintiff has raised a genuine issue of material fact as to whether he was qualified for the position.  (Docket No. 32, Ex. A, Brennan Dep., Ex. 32, Assistant Manager Job Description.)  His possession of both a

22

bachelor's degree and a masters of business administration far exceeds the job description's preference for a bachelor's degree in "ag-science" or a business-related field.  *Id.*  His prior retail experience working for Tractor Supply and for Sears meet the minimum experiential requirements, listed as follows: "21 years of age.  Previous retail experience preferred.  Agricultural background knowledge preferred."  *Id.*  His performance appraisals had been satisfactory, suggesting that he would have the ability to "[p]lan, organize and execute tasks/activities to company standards," another of the listed "Competencies & Skills."  *Id.*  Given these facts, plaintiff has carried his burden to raise a genuine issue of material fact as to his objective qualification for the Assistant Store Manager position.  Further, with respect to the third prong of the *prima facie* case, there is no genuine dispute that the plaintiff was considered for and denied a promotion to Assistant Store Manager at multiple points prior to his eventual promotion in February 2004, including in December 2002, in March or April of 2003, and in August 2003.

The true dispute lies in the fourth prong.  The plaintiff contends that he satisfies his burden under the fourth prong because three other similarly-situated, non-managerial employees who were substantially younger were promoted to Assistant Store Manager in other stores in Hutchins's district during the period of time that he was denied a promotion.  These comparables are Jerry Bakker, Ken Bailey, and Mike McClain, who were each younger than forty at the time of their promotion.  The defendant contends that these three employees are not similarly-situated because they worked for different Store Managers, in different stores, and all had better and more consistent performances than Plaintiff.  Moreover, the defendant asserts that, when Tractor Supply employees are promoted to Assistant Store Managers, they are promoted to an Assistant

23

Manager position in the store in which they are currently working; thus, the plaintiff would not have been moved out of the Dickson store to be promoted to Assistant Store Manager in another store anyway.

The plaintiff has met his burden to show that Bakker, Bailey, and McClain were all similarly-situated, substantially younger employees who received a promotion to Assistant Store Manager at a time when the plaintiff did not. In this case, although each of the employees worked under a different Store Manager, they all worked under the same District Manager, Brian Hutchins, who had the sole authority to promote them to Assistant Store Manager. Although they were all working in different stores, the stores were all part of a chain, and thereby subject to centralized management and oversight and standardized duties. The defendant argues that the three other employees all had better and more consistent performances than the plaintiff, and that their performance reviews (before and after their promotions to Assistant Manager) stated that they "Exceed Expectations." However, plaintiff's overall ratings in his ninety-day and his November 2002 performance appraisals (the only appraisals he received prior to the two-month period during which the other three comparables were promoted) also "Exceed[ed] Expectations," although he did have some areas that needed improvement. In view of the similarities between the four employees in these three relevant areas, the court finds that the plaintiff has met his burden to show that Bakker, Bailey, and McClain were substantially younger employees, were similarly-situated to him, and received promotions to Assistant Store Manager when he did not.

C.    *Legitimate Non-Discriminatory Reason and Pretext*

24

Because the court finds that Brennan has established a *prima facie* case of failure to promote with regard to both the Store Manager and the Assistant Store Manager positions, the defendant is required to articulate a legitimate, non-discriminatory reason for its actions. The defendant asserts that, although Tractor Supply considered Brennan to be a valuable team member with potential to assume a management position, he also had a history of inconsistent performance and attitude problems, which meant that neither his District Managers nor his Regional Vice President believed that he was ready for a management position prior to his February 2004 promotion. (Docket No. 30 at 11.)

The plaintiff does not challenge the defendant's proffered legitimate non-discriminatory reasons for not promoting him prior to February 2004 by reference to any of the three *Manzer* methods of establishing pretext. The plaintiff, instead, argues that "virtually all of the alleged bad acts and alleged poor performance or attitude attributed to John Brennan took place **after** Mr. Hutchins made the unlawful decision on April 15, 2003, to promote Richard Butler to store manager instead of John Brennan. Therefore, these alleged bad acts are not determinative of the claim." (Docket No. 41 at 8) (emphasis in original). By claiming that "virtually all" of the instances of poor performance or poor attitude took place after the first alleged instance of age discrimination, the plaintiff appears to argue that defendant's proffered reason for not promoting him has no basis in fact; essentially arguing that there was no record of poor performance or poor attitude prior to that time, so that could not have been the real reason that he was not promoted. A central piece of the plaintiff's argument is his urging that the court should not credit Hutchins's declaration that he discussed plaintiff's performance problems with Chacon in late March or early April of 2003 because it is contradictory to Hutchins's earlier deposition

testimony. The plaintiff also contends that, as of April 15, 2003, his credentials and performance were superior to those of Butler—Ward was recommending him, Hutchins was leading him to believe a promotion was on the way, his experience was greater and deeper than Butler's, and he was more highly educated then Butler. The plaintiff urges the court to follow the Supreme Court's decision in *Reeves*, in which the Court stated that a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer has discriminated against the plaintiff.

Because the plaintiff has failed to adduce sufficient evidence from which a jury could reasonably reject the employer's proffered legitimate, non-discriminatory reason for not promoting the plaintiff until February 2004, plaintiff's claim must fail. First, plaintiff's contention that "virtually all" evidence of his poor performance and poor attitude came after the April 15, 2003 hiring of Richard Butler is not borne out by the evidence. There are several instances of problems prior to this time. For instance, despite an overall rating that exceeds expectations, the plaintiff's November 2002 evaluation indicated multiple areas in which the plaintiff's performance fell below company expectations and standards. Although Ward attests that he began recommending the plaintiff for a promotion in late spring or early summer of 2002, when Brennan discussed a promotion with Hutchins in December 2002 the company's response was that further steps would be required to reach the point of promotion. In addition, even if, as the plaintiff urges, the court were to disregard Hutchins's affidavit testimony on the subject of his conversation with Chacon in late March or early April of 2002 (in which the two allegedly discussed the plaintiff's need to improve his performance), the record still contains evidence that such a conversation occurred, in the form of Chacon's own affidavit. Finally, although the

26

plaintiff says that, around April 15, 2003, Hutchins told him that he was on the "front burner" for a promotion, the plaintiff admits that Hutchins also told him "around the same time" that he would not be named Assistant Manager until the Dickson store conditions improved. In sum, Brennan's basic premise is not supported by the evidence; rather, there is significant evidence of gaps in plaintiff's performance prior to April 15, 2003. Although plaintiff's actions that were serious enough to result in verbal or written warnings occurred after Butler's hiring (including one incident that the plaintiff admits could have warranted his firing), there is substantial evidence that Tractor Supply had identified problems in the plaintiff's performance prior to that time.

Moreover, contrary to his assertion, Brennan's credentials were not so superior to Butler's so as to undermine the apparent legitimacy of the decision to hire Butler as Store Manager instead of promoting the plaintiff. As the Sixth Circuit observed in *Wrenn v. Gould*, management retains the prerogative to choose from among qualified candidates, particularly in selecting management-level employees, as long as the reasons for its choices are not discriminatory; it is not the role of the court to question a business's choice from among qualified candidates. *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) (upholding district court's finding that plaintiff had failed to demonstrate that an organization's reasons for hiring another candidate, whose credentials later proved to have been falsified, were pretextual when both candidates appeared qualified). With respect to Tractor Supply's choice of Butler for the Store Manager position, Butler was a Management Trainee with more than ten years of retail experience in both management and other positions. Although Brennan had, at one time, completed management training and been offered a Store Manager position at Tractor Supply,

the defendant asserts that its management needs had changed in the intervening period. The plaintiff admits to being told in December 2002 that, in order to become a Store Manager, he needed to either enter management training or become an Assistant Store Manager in Dickson first. Although the plaintiff is more highly educated than Butler, who holds only a high school degree, the defendant asserts that it valued more highly Butler's substantial retail chain experience, as compared to the plaintiff's more limited retail experience working in a Sears store from January 1998 to April 1999. (Docket No. 30 at 8.) Although Brennan perceives himself to have been the more highly qualified candidate for the position of Store Manager, the plaintiff's "perception of his competence, and the incompetence of those competing against him, is irrelevant." *Wrenn*, 808 F.2d at 502. The plaintiff has failed to show that his qualifications are so obviously superior to Butler's to suggest that the defendant's legitimate, non-discriminatory reason for not promoting Brennan was pretextual.

Because plaintiff's arguments about the timing of his performance and attitude problems and his allegedly superior credentials are not borne out by the evidence, the court finds that the plaintiff has failed to carry his burden on pretext. Nor has the plaintiff produced the "powerful circumstantial evidence of an unlawful ageist animus" that he purports to have in his brief. (Docket No. 41 at 9.) In fact, the plaintiff admits that he has no direct evidence of discrimination and that no one ever made an age-related comment to him. (Docket No. 42 ¶ 140.) The fact that Hutchins promoted a fifty-one-year-old employee named Rex Easterly to Store Manager at the same time as Butler but that the older employee was paid a lower salary does not suffice, and is the only example the plaintiff gives of his "powerful circumstantial evidence of an unlawful

ageist animus."[12]  Because the plaintiff has failed to adduce sufficient evidence from which a jury could reasonably reject the defendant's legitimate non-discriminatory reason for not promoting him prior to February 2004, summary judgment on plaintiff's failure to promote claim is proper.[13]

## II.    August 2003 Position Change

Plaintiff also asserts that Tractor Supply committed an unlawful act of discrimination in August 2003, when Butler directed the plaintiff, then a team leader working on the sales floor at the Dickson store, to switch positions with Drew Adams, a younger man at the store, who had been struggling in the position of receiver.  (Docket No. 1, Ex. A, Complaint ¶ 3; Docket No. 41 at 3.)  Although the plaintiff admits that the positions are lateral and that he received no pay cut

---

[12]The defendant dismisses the plaintiff's conclusory reference to Easterly's pay as "an attempt to hitch his wagon to a speculative theory that Mr. Easterly was apparently not paid enough (or Mr. Butler was paid too much)" that exemplifies the plaintiff's "willingness to freely question Tractor Supply's business judgment and motive without any supporting evidence."  (Docket No. 48 at 6 n.6.)  The defendant notes that it is "no surprise that Plaintiff completely ignores the pay issue as it relates to him because it is undisputed that Plaintiff was paid more than any other team member in the Dickson store." *Id.*

[13]The defendant urges the court to apply the same actor inference to infer a lack of discrimination from the fact that Hutchins both hired the plaintiff and failed to promote him.  The Sixth Circuit has adopted the same actor inference, "which allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee," *Wexler*, 317 F.3d at 572 (quoting *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995), and has extended the same actor inference to a situation in which the same individual both hires and fails to promote an employee.  *See Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 261–62 (6th Cir. 2002); *Hartsel v. Keys*, 87 F.3d 795, 804 n.9 (6th Cir. 1996).  Nevertheless, the Sixth Circuit has limited the application of the inference, concluding that a factfinder is permitted, but not required, to draw the inference and that it may be weakened by other evidence.  *See Wexler*, 317 F.3d at 574.  The court need not examine the applicability of the same actor inference in this instance, because the plaintiff's claim fails on pretext grounds without it.

as a result of the job change,[14] he asserts that the change was effectively a demotion because he was required to take orders from the younger man as a result. (Docket No. 41 at 3; Docket No. 47-1 ¶ 35.)

Because the plaintiff's reassignment to the position of receiver was not an adverse employment action, his claim of discrimination on the basis of this job change must fail. In order to establish a *prima facie* case of age discrimination on the basis of a job reassignment, a plaintiff must demonstrate that the reassignment constitutes an adverse employment action. *See Policastro*, 297 F.3d at 539. An adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Id.* (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)) (alterations in original). "Materially adverse" job changes "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *See Mitchell*, 389 F.3d at 182. "Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." *Policastro*, 297 F.3d at 539.

In this case, the plaintiff admits that the positions were lateral and that he suffered no pay cut as a result of his job change. The only aspect of the receiver job that he submits as being

---

[14]The plaintiff testified as follows, regarding the change in position:

Q.   And clearly that was not a demotion, was it, moving from the sales floor to receiver? They didn't cut your pay?
A.   They didn't cut my pay.
Q.   They told you that you were the best and they needed you to fix it.
A.   They had a situation that they wanted me to address and I did.
Q.   That was not a demotion, was it, Mr. Brennan? You can't possibly believe that that was a demotion, can you?
A.   It was probably a lateral transfer, I suppose.

(Docket No. 32, Ex. A, Brennan Dep. at 135.)

30

adverse is that he was made to report to the younger man as a result of the change. This alteration does not rise to the level of being "materially adverse." The Sixth Circuit has observed that an "employee's subjective impressions as to the desirability of one position over another are not relevant," *Policastro*, 297 F.3d at 539; *see also Mitchell*, 389 F.3d at 183, and that a "'bruised ego' is simply not enough to constitute an adverse employment action." *Mitchell*, 389 F.3d at 182. Because the plaintiff has submitted no evidence that his transfer to the receiver position was accompanied by any materially adverse changes to his pay or working conditions, and because the change in his chain of command amounts to nothing more serious than a "bruised ego," Brennan is unable to demonstrate that he was subjected to an adverse employment action as a result of the August 2003 job change.[15] Accordingly, summary judgment will be granted as to this claim as well.

## Conclusion

For the reasons expressed herein, the defendant's Motion for Summary Judgment (Docket No. 29) will be granted and his claims dismissed.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

---

[15]The court also notes that the plaintiff had previously protested his transfer in the reverse direction, from receiver to team leader, as "unwarranted, grossly unfair, and unjustly punitive."

31